UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JEROME RIDDICK, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:16-cv-53  (SRU) |
| | : | |
| DEPARTMENT OF | : | |
| CORRECTION, et al.,[1] | : | |
| Defendants. | : | |

**INITIAL REVIEW ORDER**

Plaintiff Jerome Riddick, currently incarcerated at Northern Correctional Institution in Somers, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983 alleging that the defendants violated his Eighth Amendment rights by subjecting him to chemical agents, punitive segregation, loss of telephone and visiting privileges, restraints and seclusion, and behavior observation status.  Riddick names as defendants the Department of Correction, Commissioner Scott Semple, Warden Anne Cournoyer, Deputy Warden William Mulligan, Nurse Nancy Hill, Nurse Kristin Corabine, Lieutenant Congelos, Lieutenant Guimond, Correctional Officer Rossini, Correctional Officer Sandone and Correctional Officers John Doe ##1–3.  The complaint was received by the Court on January 13, 2016.  Riddick's motion to proceed *in forma pauperis* was granted on January 19, 2016.

Under section 1915A of Title 28 of the United States Code, the Court must review

---

[1] Riddick incorrectly names the Department of Correction as the Department of Corrections.

prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I. <u>Allegations</u>

Riddick is classified as a seriously mentally ill inmate. He has been diagnosed with bipolar disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, antisocial personality disorder and borderline personality disorder. He has suicidal ideations and engages in acts of self-harm. Riddick has taken medication to treat these conditions since childhood.

    A. <u>Placement in Seclusion and Restraints</u>

On December 13, 2015, defendant Congelos sprayed chemical agents into Riddick's cell

2

and at him, causing Riddick to experience burning eyes and lungs, lung congestion, wheezing, difficulty breathing and acute chest pains. Although defendants Nurses Hill and Corabine knew that Riddick suffered from asthma, they approved the use of the chemical agents.

Following deployment of the chemical agent, defendant Congelos ordered Riddick placed in in-cell restraints and on behavioral observation status. The in-cell restraints consisted of handcuffs and leg shackles connected by a tether chain. Defendants Does applied the restraints excessively tightly, thereby exacerbating nerve damage in Riddick's hands, wrists, feet and ankles.

When defendant Congelos told Riddick he would be placed on in-cell restraints, Riddick began banging his head against the cell door until hishead started to bleed and swell. Later that evening, defendant Corabine returned to the housing unit and observed Riddick banging his head on the cell door. She did not report the occurrence. Defendant Sandone saw Riddick banging his head on the cell door. Although he tried to get Riddick to stop, he did not report the incident. Defendants Rossini, Hill and Guimond also observed Riddick banging his head on the cell door and walls but did not report the incident.

    B.    <u>Denial or Delay of Access to Treatment</u>

Riddick remained in in-cell restraints for three hours. He banged his head the entire time. The defendants permitted this action to continue, allowing Riddick to experience injuries to his face and head including, bleeding, facial swelling, headaches and acute sharp pain in his neck and head. The defendants failed to take photographs to document Riddick's injuries and did not provide any medical care or pain medication.

    C.    <u>Failure to Accommodate</u>

Defendants Department of Correction, Cournoyer and Mulligan have failed to accommodate Riddick by allowing him to use the telephone and other prison services. Defendants Department of Correction, Semple, Cournoyer and Mulligan told Riddick that he may use only mail service while confined in punitive segregation. Riddick alleges that his mental disabilities make communication by mail less effective than communication by telephone. Riddick contends that this requirement denied him "equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided others with communication." Doc. #1 at 11, ¶ 42. Defendants Department of Correction, Semple, Cournoyer and Mulligan also have deprived Riddick of visitation from family by housing him in a correctional facility far from his home.

D.  Discrimination under the Americans With Disabilities Act

Riddick also alleges that defendants Department of Correction, Semple, Cournoyer and Mulligan have discriminated against him by subjecting him to solitary confinement and extremely restrictive conditions while on administrative segregation status. They have denied Riddick telephone access, visits, commissary, a CD player, a television, hard-covered non-religious books, a hand-held Game Boy, congregate religious services, and all other property. Whenever he leaves his cell, Riddick is fully restrained. He is permitted one hour of out-of-cell recreation during the week and three showers per week. Inmates are required to recreate outdoors even during inclement weather but are not provided adequate inclement weather clothing. At all other times, he is confined in his cell. He also eats his meals in his cell. Defendants Department of Correction, Semple, Cournoyer and Mulligan state that Riddick's confinement in the administrative segregation unit is for mental health purposes, but he receives

4

no mental health treatment.

   E.  Deliberate Indifference

   The defendants were aware of Riddick's medical and mental health conditions and knew that the conditions of his confinement exacerbated those conditions. Defendants Semple, Cournoyer, Mulligan, Hill and Corabine had access to Riddick's medical and psychological records. They knew that seriously mentally ill inmates should not be placed on in-cell restraints, held in seclusion, or placed on behavioral observation status absent professional judgment and then only subject to medical supervision. Defendants Hill, Corabine, Concelos, Guimond, Rossini, Sandone and Does were aware that Riddick was engaging in self-harm and would continue banging his head on the cell door and walls but refused to protect Riddick from that self-harm.

II.  Analysis

   Riddick asserts five claims:  (1) all defendants were deliberately indifferent to his serious medical and mental health needs; (2) defendants Department of Correction, Semple, Cournoyer and Mulligan have created a policy or custom under which Riddick was denied adequate medical and mental health care and failed to adequately supervise their subordinates; (3) defendants Department of Correction, Semple, Cournoyer and Mulligan have violated the Americans with Disabilities Act by failing to afford him reasonable accommodations by confining him in restrictive conditions and not in the most integrated setting appropriate for his needs; (4) defendants Department of Correction, Semple, Cournoyer and Mulligan have violated Riddick's rights by restricting telephone and visiting privileges for non-medical and mental health reasons in violation of the Connecticut Patients' Rights; and (5) defendants Department of Correction,

5

Semple, Cournoyer, Mulligan and Congelos were deliberately indifferent to Riddick's serious mental health needs in violation of the Eighth Amendment and the Connecticut Patients' Bill of Rights.  He seeks a declaration that the defendants have violated the Connecticut Patients' Bill of Rights, the Americans with Disabilities Act and the Eighth and Fourteenth Amendments; an injunction preventing the defendants from placing Riddick in seclusion and in-cell restraints under the conditions described in the complaint until approved by qualified professionals and only subject to medical supervision; compensatory damages; and punitive damages.

Riddick names the Connecticut Department of Correction as a defendant.  The Department of Correction is a state agency, which is not considered a person within the meaning of section 1983.  *See Will v. Michigan Dep't of Police*, 491 U.S. 58, 70–71 (1989).  In addition, state agencies are protected by Eleventh Amendment immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).   Thus, the Department of Correction is not susceptible to liability under section 1983.  *See McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) (Eleventh Amendment bars suits for money damages or injunctive relief against state agencies).  All section 1983 claims against the Department of Correction are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).  The ADA claim against the Department of Correction remains.

The Eleventh Amendment also divests the district court of subject matter jurisdiction over any claims for monetary damages against a state official acting in his official capacity unless the state has waived that immunity or Congress has abrogated it.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Section 1983 does not abrogate state sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 341–45 (1979).  Nor has Riddick alleged any facts suggesting that Connecticut has waived that immunity.  Accordingly, any claims for damages

against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

III.   Conclusion

All section 1983 claims against the Department of Correction and all claims for damages against the remaining defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).   The complaint will proceed on all other claims.

The Court enters the following orders:

(1)   **The Clerk shall** verify the current work address of defendants Semple, Cournoyer, Mulligan, Hill, Corabine, Congelos, Guimond, Rossini and Sandone with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on that defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)   **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the amended complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)   **The Clerk shall** send written notice to the plaintiff of the status of this action,

along with a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the

notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

     (10)    The court cannot effect service on defendants John Doe #1–3 without their full names and current work addresses.  The plaintiff is directed to file an amended complaint containing this information within **twenty (20) days** from the date of this order.  Failure to timely file the amended complaint may result in the dismissal of all claims against defendants Doe without further notice from the court.

     **SO ORDERED** this 29th day of January 2016 at Bridgeport, Connecticut.

                             /s/ Stefan R. Underhil
                             Stefan R. Underhill
                             United States District Judge