# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JA-QURE AL-BUKHARI, | : | |
| *also known as* JEROME RIDDICK, | : | |
| Plaintiff, | : | |
| | : | LEAD CONSOLIDATED |
| v. | : | CASE NO. 3:16-cv-53 (SRU) |
| | : | |
| DEPARTMENT OF | : | |
| CORRECTION, *et al.*, | : | |
| Defendants. | : | |

## RULING ON DEFENDANTS' MOTION TO DISMISS IN PART
## AND ORDER OF PARTIAL DISMISSAL

Ja-Qure Al-Bukhari, also known as Jerome Riddick, currently confined at MacDougall-Walker Correctional Institution, commenced this civil rights action *pro se*. The Court has consolidated this case with *Al-Bukhari v. Department of Correction, et al.*, No. 3:16-cv-353 (SRU); *Al-Bukhari v. Semple, et al.*, No. 3:16-cv-1428 (SRU), and *Al-Bukhari v. Semple, et al.*, No. 3:17-cv-134 (SRU). Doc. # 123. On November 3, 2017, Al-Bukhari filed a second amended complaint including all of the claims from the four consolidated cases that he intends to pursue. Doc. # 139 (hereinafter, the "Second Am. Compl."). The complaint includes forty-three defendants: The Department of Correction, Scott Semple, Scott Erfe, Anne Cournoyer, William Mulligan, William Faneuff, Derrick Molden, Jesse Johnson, Marc Congelos, Christopher Porylo, Alphonso Lindsey, Daniel Phillips, Ryan Baron, Jeremie St. Pierre, James Vassar, Josh Whitted, Michael Pereira, Kyle Boulerice, Ryan Day, Paul Balatka, Nancy Hill, Kristen Carabine, Ellen Durko, Barbara Savoie, Lisa Alvarez, "Tuttle", "Guimond", "Bujnicki", "Bradley", "Wemmel", "Schmidt", "Bogan", "Thorpe", "McCarthy", "Loney", one Jane Doe and seven John Does. The defendants have collectively filed a motion to dismiss the case in part. Doc. # 140. For the

reasons that follow, the defendants' motion is granted in part.

## I. Standard of Review

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement. *Id.* Moreover, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements", are not entitled to a presumption of truth. *Id.* Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and "draw[] all reasonable inferences in the non-movant's favor". *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

## II. Facts[1]

Al-Bukhari has been diagnosed with several mental health disorders including post-traumatic stress disorder, bipolar disorder, attention deficit hyperactivity disorder, antisocial personality disorder with narcissistic and borderline traits, and paranoia manifested by oppositional deficit disorder. He has suicidal ideations and engages in acts of self-harm. Al-Bukhari also has several medical disorders including asthma, sciatica, a left-hip condition, and degenerative discs in his neck and degenerative joint disease in his shoulders. These medical conditions cause Al-Bukhari to experience pain, muscle spasms, numbness, and tingling.

On November 17, 2015, defendant Johnson placed Al-Bukhari in disciplinary

---

[1] The following facts are taken from the operative second amended complaint at doc. # 139.

segregation. On November 19, 2015, Johnson ordered that Al-Bukhari be placed in in-cell restraints. Defendants Johnson, Phillips, St. Pierre, Baron, and Vassar applied the restraints. When Al-Bukhari resisted, Johnson sprayed him with a chemical agent and the five defendants kicked and punched Al-Bukhari and used force in restraining him. They did not properly decontaminate him. When Al-Bukhari threatened self-harm, Johnson ordered him placed in four-point restraints. After the four-point restraints were applied, Al-Bukhari began banging his head on the back of the bunk. Nothing was done to address this self-harm. Defendant Erfe was generally aware of the defendants' actions.

On December 13, 2015, defendant Congelos excessively sprayed Al-Bukhari with a chemical agent while defendants Hill and Carabine were present. Al-Bukhari was then placed in in-cell restraints on behavior observation status. Defendants Loney and Day and Officer Gonzalez applied the restraints, which consisted of handcuffs, shackles, and a tether chain, excessively tightly. When Congelos told Al-Bukhari that he would be placed in in-cell restraints, Al-Bukhari banged his head on the cell door until it bled. Correctional staff witnessed this action but did not report it. Al-Bukhari continued banging his head for the three hours he remained in in-cell restraints. Defendants Semple, Cournoyer, Mulligan, and Carabine possessed Al-Bukhari's medical and mental health records, and so they were aware of his conditions, but they failed to prevent the self-harm.

On March 9, 2016, defendants Porylo and Guimond told Al-Bukhari that he would be placed in in-cell restraints for covering his cell door window. Al-Bukhari was naked at the time. When he refused to get dressed, Porylo sprayed a chemical agent on his genitalia and buttocks. Al-Bukhari submitted to handcuffs so he could be decontaminated. Porylo and several John Doe defendants subdued Al-Bukhari and dressed him in underwear. En route to the medical

3

screening room, Al-Bukhari slipped, and John Doe 1, John Doe 2, and John Doe 3 slammed Al-Bukhari to the ground and Porylo sprayed him with a chemical agent. Porylo and Carabine refused to provide a shower for proper decontamination. When Al-Bukhari threatened self-harm, Porylo ordered him placed in four-point restraints. Al-Bukhari remained in four-point restraints for several hours. During that time, he experienced pain and burning from the chemical agent. He was released to in-cell restraints where he remained for several days.

On March 10, 2016, Al-Bukhari told defendants Wemmel, Schmidt, McCarthy, and Bogan that he had defecated on himself while restrained. They denied his request to clean himself and did not report the incident. Defendants Bradley and Guimond also refused to permit Al-Bukhari to clean himself. In response, he began banging his head against the cell door. They did nothing to stop the self-harm until a social worker present that day stated that he had to be returned to four-point restraints. Al-Bukhari was confined in four-point and in-cell restraints for thirty-six hours. Semple, Cournoyer, and Mulligan were aware of Al-Bukhari's medical and mental health conditions but permitted use of high concentrations of the chemical agent.

On January 4, 2017, defendant Lindsey sprayed Al-Bukhari with a chemical agent. Although defendant Balatka knew Al-Bukhari was asthmatic, he approved use of the chemical agent. Lindsey ordered Al-Bukhari placed in in-cell restraints. Al-Bukhari told Lindsey that he would bang his head with the restraints and against the cell door and walls, but Lindsey did nothing. Al-Bukhari banged his head until it bled.

On January 5, 2017, defendants Tuttle and Bujnicki ordered that Al-Bukhari be continued on in-cell restraints. During a restraint check, they sprayed him with a chemical agent. Al-Bukhari complained to defendant Durko that the restraints were causing muscle spasms, pain and numbness, but she did nothing. Later in the day, defendants Congelos and Porylo and the Doe

defendants entered Al-Bukhari's cell while he was asleep, and while Porylo and the Doe defendants held Al-Bukhari down, one Doe defendant pulled painfully on Al-Bukhari's genitalia and asked Al-Bukhari "you still want to assault staff asshole?" Al-Bukhari also alleges that, sometime over the next two weeks, Congelos loudly proclaimed that Al-Bukhari was a "snitch" and made taunting comments regarding Al-Bukhari's genitalia. Defendants Lindsey, Porylo, Congelos, Balatka, Durko, Tuttle, and Bujnicki did not prevent their fellow officers from assaulting Al-Bukhari.

### III. Discussion

Al-Bukhari includes eight counts in his second amended complaint: Count One alleges that, by their use of restraints and chemical agents, the defendants have breached a 2014 agreement (the "2014 Settlement Agreement") that settled a prior case, *Riddick v. Department of Correction*, No. 13-cv-656 (SRU), and the breach of which is the subject of a (recently reopened) parallel lawsuit, *Riddick v. Semple*, No. 3:16-cv-1769 (SRU); Count Two alleges a breach of the covenant of good faith and fair dealing associated with the 2014 Settlement Agreement; Count Three re-alleges breach of the 2014 Settlement Agreement regarding use of restraints and chemical agents; Count Four claims that promissory estoppel applies to the defendants' breaches of the 2014 Settlement Agreement; Count Five alleges use of excessive force in violation of the Eighth Amendment; Count Six alleges violation of Al-Bukhari's due process rights; Count Seven alleges assault and battery; and Count Eight alleges intentional infliction of emotional distress.

The defendants have moved for partial dismissal of the second amended complaint, arguing that all claims brought under 42 U.S.C. § 1983 against the Department of Correction and all other defendants in their official capacities are barred by the Eleventh Amendment, that the claims in Count Three duplicate those in Count One; (3) the allegations in Count Six, that

5

placement in restraints violates the Fourteenth Amendment, fail to state a claim for which relief may be granted; (4) the allegations in Court Four, that the defendants are liable under a theory of promissory estoppel, fail to state a claim for which relief may be granted; and (5) the allegations in Count Eight, that the defendants intentionally inflicted emotional distress on Al-Bukhari, fail to state a claim for which relief may be granted.

A. <u>All Official Capacity Claims Are Dismissed</u>

In his prayer for relief, Al-Bukhari seeks declaratory and injunctive relief as well as damages from the defendants in their official and individual capacities. The defendants argue that the Eleventh Amendment bars all claims against The Department of Correction and all claims for damages against the other defendants in their official capacities. They also contend that Al-Bukhari's request for declaratory relief is not cognizable in this action. The defendants do not address Al-Bukhari's request for injunctive relief.

1. *All Claims Against The Department of Correction Are Dismissed*

The Department of Correction is a state agency. As such, it is not subject to suit under 42 U.S.C. § 1983 because it is not a person within the meaning of the statute. *See Bhatia v. Connecticut Dep't of Children & Families*, 317 F. App'x 51, 52 (2d Cir. 2009) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989)). In addition, under Connecticut law, the state cannot be sued without its consent, unless the plaintiff establishes that an exception to the doctrine of sovereign immunity applies. *Mercer v. Champion*, 139 Conn. App. 216, 224 (2012) (citing *Horton v. Meskill*, 172 Conn. 615, 623 (1977)). Al-Bukhari has not submitted evidence that the state has consented to suit in this case, or that any exception to sovereign immunity applies. Thus, because the only remaining claims in this case are federal constitutional claims under section 1983 and supplemental state law claims, The Department of Correction is

dismissed as a defendant.

2. *All Claims for Damages or Declaratory Relief Against Defendants in their Official Capacities Are Dismissed*

The Eleventh Amendment likewise bars any claim for damages against state officials in their official capacity unless the state has waived immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Al-Bukhari has submitted no evidence suggesting that Connecticut has waived the immunity. Thus, the defendants' motion to dismiss is granted with respect to all section 1983 claims for damages against the defendants in their official capacities.

Al-Bukhari also seeks a declaration that the actions of the defendants violated constitutional amendments and the 2014 Settlement Agreement. The requested declaration would address actions of the defendants underlying the claims in the second amended complaint—actions that occurred in the past. The Eleventh Amendment, however, bars declaratory relief against state officials regarding past conduct. *Green v. Mansour*, 474 U.S. 64, 74 (1985); *New York State Correctional Officers & Police Benev. Ass'n, Inc. v. New York*, 911 F. Supp. 2d 111, 129 (N.D.N.Y. 2012) (holding that the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past" (citations omitted)).

In opposition to the motion to dismiss, Al-Bukhari contends that there were more incidents that are not included in the amended complaint. Pl.'s Mem., doc. # 157 at 6 n.1. He cannot amend his complaint through a memorandum in opposition to a motion to dismiss. *See Uddoh v. United Healthcare*, 354 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) (citing cases). This case currently includes only the four referenced incidents, all of which occurred in the past. The

defendants' motion to dismiss is granted with respect to the claims for declaratory relief.

B. Counts One and Two Are Dismissed Without Prejudice to Refiling in *Riddick v. Semple*, No. 16-cv-1769 (SRU)

In Counts One and Two, Al-Bukhari alleges breach of the 2014 Settlement Agreement and the covenant of good faith and fair dealing associated with the agreement. In accordance with my order at doc. # 179 in this case, Counts One and Two are hereby dismissed without prejudice to refiling in an amended complaint in *Riddick v. Semple*, No. 3:16-cv-1769 (SRU), the case designated as addressing all claims for violation of the 2014 Settlement Agreement and subsequent 2015 clarification of the terms of that agreement.

C. Count Three Is Dismissed as Duplicative

The defendants contend that the allegations in Count Three duplicate those in Count One, and Al-Bukhari agrees that Count Three may be dismissed as duplicative. Accordingly, Count Three is dismissed without prejudice as duplicative.

D. Count Four Is Dismissed Because the Promise Relied Upon Is Contained in an Express Contract

The defendants move to dismiss Count Four because Al-Bukhari's claim for promissory estoppel is based on violation of a written agreement, the 2014 Settlement Agreement.

An essential element of a claim for promissory estoppel under Connecticut law is "the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." *Edelson v. Chapel Haven, Inc.*, 2017 WL 810274, at *16 (D. Conn. Mar. 1, 2017) (quoting *Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 104 (2003) (internal quotation marks omitted). However, a claim for promissory estoppel is not cognizable where an express contract exists between the parties and the promise relied upon is contained in that

contract. *Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 374 (D. Conn. 2012) (Although party may include alternative arguments, he "cannot overlook the existence of an express contract to assert a theory of promissory estoppel"); *Wood v. Sempra Energy Trading Corp.,* 2005 WL 465423, at *11 (D. Conn. Feb. 22, 2005) (holding that where both parties agreed that an express contract existed, plaintiff could not pursue a claim of promissory estoppel).

Al-Bukhari concedes that a settlement agreement was reached in *Riddick v. Department of Correction, et al.*, No. 3:13-cv-656 (SRU), and has attached a copy of the agreement to his opposition to the motion to dismiss. He has filed motions in that case to reopen the case and enforce the settlement agreement and has included counts in this and several other cases for violation of the 2014 Settlement Agreement. The promises underlying this claim are those included in the 2014 Settlement Agreement. Second Am. Compl. at 33 ("Because the defendants have bre[a]ched the settlement agreement their actions are subject to promissory estoppel with respect to restraining and spraying chemical agents on or at the plaintiff."). Because the promise is contained in a written agreement, there is no basis upon which to pursue a claim for promissory estoppel. Al-Bukhari's claim in Count Four for promissory estoppel is hereby dismissed.

E. Due Process Claims in Counts Five and Six Are Dismissed Because Redundant with Eighth Amendment Claim

In Count Five, Al-Bukhari contends that the defendants used excessive force against him, including via restraints and the spraying of chemical agents, in violation of the Eighth and Fourteenth Amendments. In Count Six, Al-Bukhari contends that the use of restraints violated a due process liberty interest in being free from unreasonable bodily restraints. The defendants have not moved to dismiss Al-Bukhari's Eighth Amendment claims, but did move to dismiss Al-Bukhari's due process claim in Count Six. In response to the motion to dismiss, Al-Bukhari

9

states that he is asserting a substantive due process claim in Count Six. The facts supporting Al-Bukhari's due process claims are the same facts that form the basis of Count Five, in which Al-Bukhari argues that the use of restraints and chemical agents violated his Eighth Amendment right to be free from the use of excessive force.

The Supreme Court has held that the generalized notion of substantive due process guaranteed by the Fourteenth Amendment does not support a constitutional claim where another constitutional amendment provides explicit protection against the alleged conduct. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."); *see also id.* at 395 n.13 ("Any protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment."). In *Graham*, the claim was for use of excessive force in effecting an arrest and that claim fell under the Fourth Amendment protection against unreasonable seizures. *Id.* at 389-90. Here, Al-Bukhari's claims of excessive force and inappropriate restraints fall under the Eighth Amendment prohibition against cruel and unusual punishment, a claim he has asserted in Count Five. Thus, Al-Bukhari's claims must be analyzed under the Eighth Amendment, not the substantive due process clause of the Fourteenth Amendment. *See Shand v. Chapdelaine*, 2018 WL 279980, at *3 (D. Conn. Jan. 3, 2018) (dismissing as duplicative a substantive due process claim based on the same facts as an Eighth Amendment claim for use of excessive force through placement in restraints). Al-Bukhari's substantive due process claims are thus dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

F. Claims in Counts Five, Seven and Eight Will Proceed in Whole or in Part

As discussed above, the defendants have not moved to dismiss Al-Bukhari's claim in Count Five for excessive force in violation of the Eighth Amendment, so it will not be dismissed. The defendants have also not moved to dismiss Al-Bukhari's state law claims of assault and battery in Count Seven and those claims will also not be dismissed. The defendants have, however, moved to dismiss Al-Bukhari's claims under Count Eight for intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress, Al-Bukhari must show that each defendant intended to inflict emotional distress or knew or should have known that emotional distress would likely result from his conduct, that the conduct was extreme and outrageous, that each defendant's conduct is the likely cause of Al-Bukhari's distress, and that Al-Bukhari's distress was severe. *Gomez v. City of Norwalk*, 2018 WL 780213, at *8 (D. Conn. Feb. 8, 2018); *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 526-27 (2012). Liability for intentional infliction of emotional distress requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Appleton v. Board of Educ. of Town of Stonington*, 254 Conn. 205, 210-11 (2000).

Al-Bukhari alleges that he was placed in in-cell restraints despite his mental conditions, which caused him to bang his head against the door when so confined, and that he was sprayed with a chemical agent needlessly and without proper decontamination. The defendants argue that his claims are conclusory. In opposition, Al-Bukhari contends that the restraints were applied merely because he "acted up," not because of conduct threatening institutional safety and

11

security.  He also argues that the defendants acted intentionally.  Without further development of the record, the Court cannot determine whether the defendants' actions rise to the level of extreme and outrageous conduct.  Accordingly, the defendants' motion to dismiss is denied with respect to Count Eight, and Al-Bukhari's claims for intentional infliction of emotional distress will proceed.

## IV. CONCLUSION

The defendants' motion to dismiss, Doc. # 140, is **GRANTED** with respect to all claims against The Department of Correction, claims under section 1983 for damages against the defendants in their official capacities, the request for declaratory relief, the duplicative contract claim in Count Three, and the promissory estoppel claim in Count Four.  The motion to dismiss is **DENIED** with respect to the claim for intentional infliction of emotional distress in Count Eight.  Al-Bukhari's due process claims in Counts Five and Six are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  Pursuant to my order at doc. # 179 in this case, Counts One and Two are **DISMISSED** without prejudice to refiling in an amended complaint in *Riddick v. Semple*, No. 3:16-cv-1769 (SRU).  Accordingly, this action will proceed on Al-Bukhari's Eighth Amendment claim in Count Five, Al-Bukhari's state law assault and battery claims in Count Seven, and Al-Bukhari's intentional infliction of emotional distress claims in Count Eight.

In addition, although he does not assert in this case any claim for deliberate indifference to serious medical or mental health needs, Al-Bukhari does allege facts that could support such a claim.  If he intends to pursue a claim for deliberate indifference to serious medical needs relating to any of the four incidents underlying this consolidated case, Al-Bukhari should do so in Case No. 3:16-cv-2009 (SRU), the case designated in my order at doc. # 179 for pursuing such claims.

Finally, subsequent to the filing of the defendants' motion to dismiss, Al-Bukhari has filed several ancillary motions that remain outstanding:

- Al-Bukhari has filed, at doc. ## 167 and 168, motions for emergency orders to show cause and for temporary restraining orders and preliminary injunctions. Al-Bukhari seeks to prevent defendants from limiting his ability to communicate with Inmates' Legal Aid Program personnel. As a preliminary matter, and as outlined in my order at doc. # 181, such requests are not an appropriate topic of a request for emergency relief. Accordingly, doc. ## 167 and 168 are **DENIED without prejudice**. Al-Bukhari may refile the motions as preliminary injunctions, but not as emergency orders to show cause or as temporary restraining orders. Because Al-Bukhari's motion at doc. #168 is denied without prejudice, his motion at doc. # 180 for an extension of time to respond to the defendants' opposition to such motion is **DENIED** as moot.

- Al-Bukhari has filed, at doc. # 169, a motion to compel discovery responses from the defendants. He has not, however, indicated a sufficiently specific and ripe discovery dispute to merit an order to compel. The discovery requests that are the subject of his motion are frequently overbroad or irrelevant, particularly in light of the narrowing of the claims that will proceed in this action following my dismissal of many claims in the present order. Al-Bukhari's motion to compel at doc. # 169 is thus **DENIED without prejudice**. The parties are directed to confer about Al-Bukhari's discovery in an effort to resolve the issue. Al-Bukhari has also moved, at doc. # 178, for an extension of the time for discovery until January 8, 2019 to complete discovery. There appears to have been little progress made on

13

- discovery in this action so far.  Al-Bukhari's motion for an extension of time for discovery is GRANTED.  The parties shall conclude discovery on or before January 8, 2019.  Discovery should be tailored to the claims that remain in the present action.  Both parties are cautioned that they are under an obligation to confer in good faith prior to filing any motions related to discovery issues.

- Al-Bukhari has filed motions to appoint counsel at doc. ## 170 and 171.  The motion to appoint counsel at doc. # 170 was cross-filed in multiple cases, each of which are at different degrees of advancement, and does not properly explain why counsel would be merited in this specific case.  In light of Al-Bukhari's more specific request for counsel at doc. # 171, the motion at doc. # 171 is **DENIED as moot**.  At doc. # 171, Al-Bukhari acknowledges that he previously had counsel appointed for him in this case, but that such counsel was permitted to withdraw.  Al-Bukhari also acknowledges that I have previously denied his attempt to obtain a replacement pro bono counsel.  Civil litigants have no constitutional right to appointment of counsel, *Parks v. Smith*, 505 F. App'x 42, 43 (2d Cir. 2012) (citing *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172-74 (2d Cir. 1989)), and the Second Circuit repeatedly has cautioned the district courts against the routine appointment of counsel, *see, e.g.*, *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003).  For the reasons stated in my prior refusal to appoint Al-Bukhari replacement *pro bono* counsel, on July 13, 2017, I do not think this case is currently a suitable one for the appointment of counsel, and I think that Al-Bukhari will be able to litigate this case well on his own.  Although Al-Bukhari is free to retain counsel, I **DENY** Al-Bukhari's motion to appoint

14

counsel at doc. # 171.

- Al-Bukhari has filed, at doc. # 176, a motion ordering the return to him of certain legal materials. Again, as outlined in my order at doc. # 181, the issue of the return of his legal materials is an inappropriate subject for emergency relief. Moreover, Al-Bukhari has himself, at doc. # 184, filed a motion to withdraw the motion at doc. # 176, along with other requests at doc. ## 156 and 162, which were improperly filed as proposed orders. Accordingly, Al-Bukhari's motion to withdraw at # 184 is **GRANTED**, and the motions at doc. ## 156, 162, and 176 are hereby denied as moot. Al-Bukhari had also sought to withdraw his filing at doc. # 162 via a filing at doc. # 177, and the motion at doc. # 177 thus is also **DENIED as moot**.

- Al-Bukhari has filed, at doc. # 183, a motion for a temporary restraining order related to an additional recent incident on June 11, 2018, in which Al-Bukhari states that he again injured himself by banging his head against a wall. Al-Bukhari requests that the defendants be ordered to preserve camera footage relevant to that incident and to take photographs of his injuries from the incident, presumably to assist Al-Bukhari in bringing claims related to that incident. Al-Bukhari's request is not an appropriate subject for a temporary restraining order in this case for two reasons. First, Al-Bukhari appears to be seeking the temporary restraining order to preserve and/or obtain evidence that would further legal claims he is pursuing or intends to pursue. Even to the extent such evidence would be relevant to a claim in the present action, a temporary restraining order is not the appropriate vehicle for pursuing discovery efforts, as explained in my

order at doc. # 181. Moreover, the purported incident on June 11, 2018 is not relevant to any underlying claims in this action, which all include events occurring no more recently than January 2017. The present cause of action must move forward based on the allegations included in the most recent second amended complaint, which I will not allow to be further amended. To the extent that additional incidents occur that Al-Bukhari would like to make the subject of claims for relief, Al-Bukhari must file a new complaint setting forth such incidents. Al-Bukhari's motion for a temporary restraining order at doc. # 183 is thus **DENIED**. My denial of Al-Bukhari's motion for a temporary restraining order does not change the fact that the defendants are now on notice that Al-Bukhari may pursue legal claims related to the June 11, 2018 incident, and therefore must preserve the pertinent camera footage.

As set forth above, this action will proceed on Al-Bukhari's claims of Eighth Amendment violations, assault and battery, and intentional infliction of emotional distress, as set forth in his second amended complaint. Further amendments to his complaint will not be permitted. The parties shall conclude discovery on or before January 8, 2019, and any motions for summary judgment shall be filed on or before February 8, 2019.

Riddick's claims will proceed against all defendants except Pereia, Boulerice, Savoie and Alvarez. The Clerk is directed to terminate those defendants from the case.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of September 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge